FILED

10:17 am, 5/18/12

Tim J. Ellis
Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re ) | |
| ) | |
| CLINTON KELLY JOHNSON and ) | Case No. 11-20050 |
| NIKI LYNN JOHNSON, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |
| W. ROY CRAWFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 11-2016 |
| ) | |
| CLINT JOHNSON and NIKI JOHNSON, ) | |
| ) | |
| Defendants. ) | |

**OPINION ON COMPLAINT**

On May 2, 2012, this matter came before the court for trial on the Complaint to Determine Dischargeability under 11 U.S.C. §523(a)(6) filed by W. Roy Crawford ("Plaintiff") and the response filed by Clint Johnson and Niki Johnson ("Defendants"). The parties were represented as stated on the record. At the conclusion of the trial, the court took the matter under advisement. Upon review of the record, testimony and evidence, the court is prepared to rule.

**Jurisdiction**

The court has jurisdiction over this adversary complaint pursuant to 28 U.S.C.

§§ 157(a) and 1334(a). This is a core proceeding under § 157(b)(2)(I). The complaint is brought pursuant to 11 U.S.C. § 523(a)(6).[1]

**Findings of facts**

The following facts are uncontroverted:

1. On July 18, 2007, Defendants purchased from the Plaintiff, the established business of W.R. Crawford, Inc. ("Crawford, Inc.") by entering into the "W.R. Crawford, Inc., Stock Purchase Agreement ("Purchase Agreement").

2. Simultaneously, Clint Johnson and the Plaintiff executed a Security Agreement granting the Plaintiff a security interest in the following collateral:
    "(a)  all accounts and contract rights owned by debtor with respect to the oil and gas support services business operated by W.R. Crawford, Inc. (the 'Business'), located at...; and
    (b)  all equipment, tools, furniture, supplies and other tangible personal property of the above Business, and all other goods and property of the same classes subsequently acquired or owned by debtor with respect to the Business."

3. Defendants signed a promissory note in the amount of $1,100,000.00 payable to the Plaintiff. Defendants were also provided a list of assets and equipment at the time of the sale.

4. The Defendants made payments to the Plaintiff pursuant to the Purchase Agreement from July 30, 2007 through April 16, 2010.

5. As of April 16, 2010, the balance due to the Plaintiff was the amount of $1,069,937.52, including interest and late fee assessments.

6. On September 22, 2008, Crawford, Inc. and the Defendants, as individuals, applied to First Bank located in Mountain View, Wyoming, for a loan in the amount of $300,000.00. The loan was approved and a promissory note was signed, secured by: (1) a Mortgage on the real property owned by Defendants; and, (2) a Commercial Security Agreement which describes the collateral as "All Inventory, Accounts and General Intangibles."

---

[1] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code.

Page 2

7. First Bank filed a UCC-1 Financing Statement with the State of Wyoming Secretary of State on February 18, 2009, describing the Collateral as: "All Accounts, Inventory; General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds)."

8. The Plaintiff filed a UCC Filing Statement with the Wyoming Secretary of State on July 9, 2010.

9. The Defendants filed for Chapter 7 bankruptcy protection on January 20, 2011.

The court finds the following additional facts. The Plaintiff owned and operated Crawford, Inc., a well testing business, since 1993 and incorporated the business in 1995. In early 2007, the Plaintiff retained Mr. Johnson as a subcontractor. This relationship lasted for about five months. Neither party remembers who initiated the discussion, but on July 18, 2007, the Defendants purchased Crawford, Inc. for the amount of $1,100,000.00. The Plaintiff financed the purchase and the Defendants executed the Promissory Note and Security Agreement described above. Each party had their own attorney representing them throughout the sale.

After the sale was completed, the Plaintiff helped Mrs. Johnson set up the accounts for the business' bookkeeping. The Defendants testified that they continued to use the same accountant for Crawford, Inc. as was used by the Plaintiff.

Mr. Johnson testified that in 2008 and 2009, the industry became more regulated and required new and special equipment. The business needed additional working capital, equipment, valves, "iron" and to replace old equipment. The Defendants, as officers of

Crawford, Inc. and individually, applied to First Bank for a loan in the amount of $300,000.00.

At the time the Defendants applied for the loan, they testified that their home had substantial equity. The amount owing on the home at that time appeared to be less than $89,000.00. The home was used as collateral for the loan as evidenced by the mortgage executed on behalf of First Bank. The Defendants provided additional collateral by executing a Commercial Security Agreement granting First Bank a lien on "All Inventory, Accounts and General Intangibles" of Crawford, Inc. Subsequently, the Debtors, individually, borrowed additional funds from First Bank on September 30, 2010 in the principal amount of $34,273.32. The collateral provided for this loan was described as "All Inventory, Accounts, *Equipment*[2] and General Intangibles" of Crawford, Inc.

## Discussion

Plaintiff alleges that the Defendants willfully and maliciously injured the Plaintiff by converting the assets that were collateral for Plaintiff's loan to collateral for the loans to First Bank.

Under the Bankruptcy Code, a discharge under §727 does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.[3] There is substantial case law interpreting this section of the Bankruptcy Code.

---

[2] Emphasis added.

[3] §523(a)(6).

The word "willful" in §523(a)(6) modifies the word "injury" indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Negligent or reckless acts do not suffice to establish that a resulting injury is "willful and malicious." Intentional torts generally require that the actor intends "the consequence of an act" not simply the act itself."[4] A court must not overlook the criticality of the terms "willful" act and "malicious" injury. In §523(a)(6), without proof of both, an objection to discharge under the section must fail. The term "malicious" requires proof that the debtor either intended the resulting injury or intentionally takes action that is substantially certain to cause the injury. Unless a debtor as the result of a willful and malicious act, intended to do injury to a person, the debt is discharged.[5] The Supreme Court's ruling in *Geiger*, is a narrow reading of "willful" and is akin to the standard of deliberate injury necessary for an intentional tort. It appears to be the same for conversion as for any other injury; to be willful, the debtor must intend that conversion of the collateral injure the creditor or the creditor's lien interest. Willful injury may be established indirectly by evidence of both the debtor's knowledge of the creditor's lien rights and the debtor's knowledge that the conduct will cause particularized injury.[6]

The Plaintiff asserts he was willfully and maliciously injured by the Defendants when they converted the assets of Crawford, Inc. to First Bank by executing the Commercial Security Agreement that granted First Bank a lien on the assets of Crawford,

---

[4] *Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

[5] *Panalis v. Moore*, 357 F.3d 1125 (10th Cir. 2004).

[6] *In re Longley*, 235 B.R. 651 (10th Cir. BAP 1999).

Inc. The Plaintiff argues that the Defendants intentionally failed to disclose their debt and the security agreement with the Plaintiff when they applied for loan from First Bank. During the course of the transactions, First Bank filed the required UCC Financing Statements with the Wyoming Secretary of State obtaining a priority position as to the collateral. The Plaintiff argues that Defendants caused his injury, i.e. that of having a lien on the collateral that was after that of First Bank's, causing his injury.

In this case the court would have to find that the Defendants intended that First Bank's security interest in the collateral have a higher priority than that of the Plaintiff to find that the Defendants willfully and maliciously injured the Plaintiff. The court does not find the facts and evidence support this assertion.

The court finds that Mr. Johnson, although knowledgeable about the type of service that Crawford Inc provides, was not sophisticated about the accounting side of operating a business. Mrs. Johnson did not appear to have a business or bookkeeping background or experience either. The Defendants testified that the Plaintiff helped Mrs. Johnson set up the account for Crawford, Inc. characterizing the payments to the Plaintiff as a payroll deduction. The Defendants testified that they considered the debt owed to the Plaintiff a business debt not a personal debt, although the documents reflect that they signed the Purchase Agreement, promissory note and security agreement with the Plaintiff as individuals.

The Plaintiff presented the court with numerous business records for both Crawford, Inc. and the Defendants. The documents ranged in dates from prior to the Defendants

purchase of Crawford Inc through the period of time they applied for loans from First Bank. These documents consisted of Personal Financial Statements, Profit & Loss Statements and a Balance Sheet. Plaintiff asserts that these financial documents reflect Defendants' intentional act of not disclosing to First Bank that they owed Plaintiff the amount of the purchase price for the business or that they executed a securing agreement granting the Plaintiff a lien on the assets of the business. Subsequently, First Bank approved the loans and placed liens on the same collateral as the Plaintiff. First Bank then filed the UCC Financing Statement with the Secretary of State according to the requirements of Wyoming State law to perfect their security interest. As the Plaintiff failed to record his UCC Financing Statement with the Wyoming Secretary of State until July 9, 2010, First Bank had a priority security position in the collateral.

Marty Watkins, president of First Bank located in Mountain View, Wyoming testified that he knew both the Plaintiff and the Defendants as both parties banked with First Bank. Mr. Watkins also knew the parties personally from the community. Upon review of the Defendants' profit and loss statement, Mr. Watkins testified that he did not see any notation about the debt owed to the Plaintiff on those documents. More importantly, Mr. Watkins testified that he would not expect to see this debt listed as "...this is a profit and loss statement...[it] does not list debts, but lists income and expenses..." Additionally, the Defendants testified that the payments to the Plaintiff were reflected on Crawford, Inc.'s Profit and Loss Statements under the category of payroll expenses. The Defendants had placed the payments under this category under the advisement of Plaintiff when he helped Mrs. Johnson set up the accounts for Crawford, Inc.

The evidence reflects that the Defendants knew that they had given a security interest in the assets of Crawford, Inc. as collateral for the purchase of the business from the Plaintiff. However, there is not any evidence that the Defendants intended that Plaintiff's security interest would be preempted by First Bank. The Plaintiff did not prove that the Defendants caused willful and malicious injury to the Plaintiff, Therefore, Plaintiff's objection to Defendants' discharge fails.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

DATED this __18__ day of May, 2012

By the Court

HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Loretta Howieson Gerrard
    Clark Stith